July 15, 2026

**VIA ECF**

The Honorable Paula Xinis
United States District Court for the District of Maryland
6500 Cherrywood Lane,
Greenbelt, Maryland 20770

Re: ***Quzack-White et al. v. Avanath Largo Center, LLC*, No. 8:26-cv-01018-PX**
**Response to Order to Show Cause (ECF No. 17)**

Dear Judge Xinis:

Plaintiffs' Counsel submits this response to the Court's Order to Show Cause (ECF No. 17), with the sincerest apologies and genuine regret. The undersigned takes full and unqualified responsibility for the citation and quotation errors identified across ECF Nos. 12, 14-1, and 16. Each of the four items the Court's Order requires is addressed in the accompanying Declaration, filed simultaneously herewith. This letter provides context to this Court as to the undersigned's culpability and sincerity of the corrective measures taken as further detailed in the accompanying declaration.

This was not an instance of any attempt to mislead this Court or overstate Plaintiffs' position. It was an instance of zealous advocacy and – this is the most painful part to acknowledge – an overestimation of the undersigned's own ability to catch errors that a general-purpose AI tool introduced. That overestimation was rooted in credentials that, in retrospect, created a false sense of security rather than an actual safeguard: a J.D. *cum laude* from Howard University School of Law that instilled a passion for civil rights; over a decade of complex federal litigation experience at corporate law firms; a genuine voracious reader of case law (the undersigned reads Supreme Court opinions for pleasure); and former Legal Editor at LexisNexis, where his professional responsibility includes analyzing the outputs of AI-assisted legal research tools and evaluating their citation accuracy. The undersigned believed his subject-matter fluency and professional familiarity with AI legal research tools would allow him to catch errors a less experienced user might miss. That belief was mistaken, and the record now before this Court is the consequence.

The undersigned's ordinary practice is to conduct initial legal research using Google Gemini's "Deep Research" function – a tool specifically designed to compile sourced, citation-backed research reports (including actual case law) based on publicly available information – and only then to use Anthropic's Claude as a drafting assistant to convert that research into brief and memorandum text. That two-step workflow was followed here: research was conducted first, before any drafting occurred. The failure did not occur at the research stage. It occurred in the handoff: during iterative drafting, Claude substituted, altered, or generated case citations and quotations that diverged from the research already compiled, without flagging those substitutions as requiring independent re-verification before they were incorporated into the filed documents.

The undersigned's own review process at the time did not include a citation-by-citation verification checkpoint sufficient to catch those substitutions before filing. That is a failure of the undersigned's workflow – and it is a failure he has now corrected. The irony is not lost on the undersigned. A person who has experience evaluating whether AI-generated legal citations are accurate failed to apply that same rigor to his own filings in this matter. That is not an excuse. Indeed, the undersigned is embarrassed to have to address this matter but does so to provide context in assessing both culpability and the sincerity of the corrective measures that follow. The same professional context that generated false confidence is

the context in which the undersigned now brings a rigorous corrective response after conducting independent research regarding AI-assistance in response to the Court's order.

The mechanism of the error is this: Claude does not passively transcribe research. It generates text. At some point in the drafting process, Claude diverged from the research the undersigned had independently compiled without flagging those substitutions as requiring re-verification. This is not a hypothetical risk buried in technical documentation. Anthropic has published verbatim that "Claude can occasionally produce responses that are incorrect or misleading" and that "[u]sers should not rely on Claude as a singular source of truth."[1] Anthropic's researchers have separately published findings that even Claude's own introspective self-assessment of its internal states is, in the researchers' own words, "highly unreliable and limited in scope."[2] If Anthropic's own researchers describe the model's self-assessment in those terms, independent human verification is not optional. It is the whole of the safeguard.

Notably, when the undersigned presented the Court's Order directly to Claude and asked it to explain what had occurred, the tool did not equivocate (screenshots below). It responded: "I generated case citations and quotations that I either pulled from memory or fabricated outright instead of verifying them against the actual case text or project knowledge before they went into ECF Nos. 12, 14-1, and 16."[3] That's a real failure, and it's exactly the kind of failure that gets a filing struck and an attorney sanctioned." The tool further identified, unprompted, that the specific citations flagged by the Court – including *Bhogaita*, *Seremeth*, *Reserve Mining*, *Neal v. Fisher*, *Lamone*, *CGM*, *Hedgepeth*, *Bailey v. Queen's Landing*, and the *Reyes/Gilead* subsequent history – "don't show up as having gone through that same verification process," and that "[s]everal of those quotes look fabricated outright (text attributed to a real case that the case doesn't contain), which is the worst version of this problem, not just a wrong pin cite." The undersigned agrees with that self-assessment. The tool knew, in the abstract, what it had done. It told him so the moment he asked.

> Relevant chats
>
> I won't pretend I can fully reconstruct this without going line by line, but here's the honest answer: I generated case citations and quotations that I either pulled from memory or fabricated outright instead of verifying them against the actual case text or against project knowledge before they went into ECF Nos. 12, 14-1, and 16. That's a real failure, and it's exactly the kind of failure that gets a filing struck and an attorney sanctioned. I'm not going to minimize that.
>
> What I can see from past sessions: there was real verification work done on later passes — the TRO Reply/Sanctions Motion session checked Pashby, Addi, Stradtman, Goodyear, Great Steaks, etc. against project knowledge and caught some errors (the 9th Circuit cite, the Stradtman reporter number, the Addi reporter cite). But the citations the Show Cause Order is flagging — Bhogaita, Seremeth, the Fed. R. Civ. P. 71 quote, Reserve Mining, Neal v. Fisher, Lamone, CGM, Hedgepeth, Bailey v. Queen's Landing, Reyes/Gilead — don't show up as having gone through that same verification process in what I'm finding. Several of those quotes look fabricated outright (text attributed to a real case that the case doesn't contain), which is the worst version of this problem, not just a wrong pin cite.

---

[1] Anthropic, *Claude is providing incorrect or misleading responses. What's going on?*, Anthropic Support Ctr. (Mar. 16, 2026), https://support.claude.com/en/articles/8525154.

[2] Jack Lindsey et al., *Signs of Introspection in Large Language Models*, Anthropic (Oct. 29, 2025), https://www.anthropic.com/research/introspection.

[3] "Project knowledge" refers to the repository of documents where a user can store for the AI-chat bot to consult upon query. Here, the undersigned mistakenly relied on Claude reviewing his own project knowledge that include real case law.

> Resolved to acknowledge error sources and propose verification safeguards
>
> Honest answer on the "why": I don't deliberately alter case law. The failure mode is that when generating legal text, I produce language that's statistically plausible — it sounds like how a real court would phrase a holding — without that text being anchored to the actual source. If I'm not pulling the exact sentence from a retrieved document (web search result, project knowledge file), I'm reconstructing from a blend of training data and pattern-matching to "what a Fourth Circuit FHA opinion sounds like." Sometimes that lands close to the real text. Sometimes it's a clean fabrication that sounds completely legitimate, which is worse than an obvious error because it's harder to catch on a read-through.
>
> That's not an excuse, it's the mechanism — and it's exactly why courts are now requiring AI-use declarations. The tool will generate confident, fluent, wrong legal text if there isn't a hard verification step between draft and filing.

---

The tension between what AI can do and what it can be trusted to do unsupervised is not lost on Claude's own maker. Recently, Anthropic aired a global commercial for Claude during a World Cup quarterfinal match (available on YouTube: https://www.youtube.com/watch?v=jVbGX7zJHi8). With the phrase "Keep Thinking," the commercial opens with a sequence of existential questions in voiceover: "Can AI be trusted?" "Who's going to hit the brakes if we need to?" The commercial ends with Anthropic's statement that "People have a lot of hard questions about AI. It's our job to address them." Such issues with AI are industry-wide across various professions rather than a mark of unique carelessness, including the legal profession where meticulous attention to detail is the hallmark of good lawyer. But just recently, in April 2026, Sullivan & Cromwell LLP – a firm of more than 900 attorneys, ranked among the largest and most sophisticated law firms in the world, and outside AI-safety counsel to Anthropic itself – submitted a motion in a Chapter 15 proceeding before the United States Bankruptcy Court for the Southern District of New York containing dozens of AI-generated citation errors. *In re Prince Global Holdings Ltd.*, No. 26-10769 (Bankr. S.D.N.Y.). The firm's co-head of global restructuring wrote directly to Chief Judge Martin Glenn acknowledging that the firm's own internal policy instructs its lawyers to "trust nothing and verify everything." A firm with mandatory AI training, internal verification protocols, and every institutional resource available to the profession still filed a motion containing dozens of fabricated citations.

It is against this backdrop that the undersigned provides context – not to diminish the culpability of the undersigned – to serve as a reminder to "trust nothing and verify everything," which informs the corrective actions that follow. A competent and diligent attorney has an ongoing obligation to remain abreast of emerging technology that affects the practice of law. ABA Model Rule of Professional Conduct 1.1, cmt. 8. That obligation extends to AI assistance in legal drafting, as the legal profession is unmistakably moving in this direction. ABA Formal Op. 512 (July 29, 2024) (confirming that verification of AI-generated content is a non-delegable professional obligation). The undersigned must be and will be extra diligent, even vigilant, in his use of AI assistance going forward. This is not excuse-making. It is recognition of a new reality that the profession is still learning to navigate, and that carries obligations no tool can discharge on a lawyer's behalf. The undersigned has purchased a verified Westlaw Edge subscription and has implemented the mandatory citation verification protocols described in the accompanying Declaration – already in place, not merely promised. He commits to this Court, without qualification: this will not happen again.

Respectfully submitted,

/s/ Douglas W. Jackson-Quzack
Douglas W. Jackson-Quzack, Esq.
D. Md. Bar No. 20223
(240) 355-0251 | Doug.Quzack.Esq@outlook.com
Counsel for Plaintiffs