**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | * | |
| TIFFANY QUZACK-WHITE, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 26-cv-1018-PX |
| AVANTH LARGO CENTER, LLC, | * | |
| Defendant. | * | |

***

# MEMORANDUM OPINION

Plaintiffs Tiffany Quzack-White ("Tiffany") and Veronica Quzack ("Veronica") (collectively, "Plaintiffs")[1] bring federal and state claims arising from mold growth in an apartment owned and managed by Defendant Avanth Largo Center, LLC ("Avanth"). ECF No. 1. Pending in this action are Avanth's motion to dismiss, ECF No. 10; Plaintiffs' motion for leave to file an amended complaint, ECF No. 20; and Plaintiffs' motion for temporary restraining order ("TRO"), preliminary injunction, and emergency hearing, ECF No. 21. The issues are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion to file an amended complaint, DENIES Avanth's motion to dismiss the original Complaint as moot, and DENIES Plaintiffs' motion for preliminary relief.

## I. Background

Tiffany is an adult tenant at Avanth. ECF No. 20-2 ¶¶ 1, 4. Veronica is Tiffany's mother and live-in caregiver, but is not listed on the Avanth lease as a tenant. *Id.* ¶¶ 3, 14–15. The apartment suffers from a longstanding mold problem that persists through the filing of this suit. *Id.* ¶ 20.

[1] Because Plaintiffs share the same last name, when necessary, the Court refers to each by her first name.

The Plaintiffs aver that the mold has seriously affected Tiffany's health, resulting in her hospitalization from October 5, 2025, to December 16, 2025. *Id.* ¶¶ 17–19, 22, 30–45. Tiffany is now physically disabled, unable to work full-time, and in need of additional care. *Id.* ¶ 19. When Tiffany returned from the hospital on December 16, her lawyer demanded that Avanth relocate her to a mold-free unit, compensate her for out-of-pocket expenses, and conduct a full mold inspection of her apartment. *Id.* ¶¶ 22–23. Plaintiffs next decided to move to a hotel. *Id.* ¶ 28.

On December 18, an agent of Avanth responded that a contractor performed a mold and air quality assessment in the unit and that the results would be available by December 22. *Id.* ¶ 24. When no results were produced as of December 24, Plaintiffs' counsel contacted Avanth and threatened to take legal action if the mold assessment was not shared. *Id.* ¶¶ 25–26; ECF No. 21-1 at 86. Avanth's agent, in response, explained that she was in the process of scheduling a date for a thorough cleaning of the unit and asked whether Tiffany would rather return to her current apartment post-remediation or be transferred to a new unit on the same floor. *Id.* at 87. The agent also represented that "Avanth will be covering the hotel cost during this unfortunate time . . . ." *Id.*; ECF No. 20-2 at 26. Thereafter, Plaintiffs stayed at a hotel from December 17, 2025, to January 8, 2026, and next moved into Veronica's home. *Id.* ¶¶ 28–29.

Lawsuits followed. On January 7, 2026, Plaintiffs sued Avanth in the District Court for Prince George's County in a rent escrow action. *Id.* ¶ 10. Five days later, Avanth sued Tiffany in the same court for rent nonpayment for December 2025 and separately emailed Tiffany eviction notices on February 23 and March 4. *Id.* ¶¶ 49–51. Plaintiffs, in turn, filed suit in this Court on March 9, 2026. ECF No. 1. Seven days later, on March 16, Avanth posted a notice on Plaintiffs' door forewarning of its intent to evict Tiffany for failure to pay rent. *Id.* ¶ 53. But then, oddly, Tiffany received an automated lease renewal request, which she suspects had been generated by artificial intelligence ("AI"). *Id.* ¶ 57. Plaintiffs' counsel responded by letter to Avanth, demanding that it cease all direct contact with Tiffany. *Id.* ¶ 58.

Avanth next moved to dismiss the Complaint, prompting Tiffany to file an amended complaint and seek related injunctive relief. ECF Nos. 10, 12, & 14. Plaintiffs' filings, however, were riddled with inaccurate case quotations and hallucinated citations, prompting the Court to demand that counsel show cause as to whether he generated the filings with AI. ECF No. 17. Once counsel confirmed he had used AI, the Court struck the filings and allowed counsel to refile accurate versions of the same. ECF No. 19. Plaintiffs responded with a motion for leave to file an amended complaint, ECF No. 20, and a renewed motion for a TRO, preliminary injunction, and emergency hearing, ECF No. 21. Avanth maintains that several of the original claims fail as a matter of law and that the proposed amended complaint must be denied as futile. ECF No. 24. The Court turns first to the sufficiency of the claims and next to whether temporary injunctive relief is warranted.

## II. Motion to Amend the Complaint

Avanth seeks dismissal of the original Complaint and urges denial of amendment as futile for the same reasons articulated in its motion to dismiss. ECF No. 24 at 2–5 (relying on ECF No. 10). Amendment of pleadings should be liberally granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 706 (D. Md. 2011). "[A] request to amend should only be denied if . . . 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant").

A proposed amendment is futile when it "is clearly insufficient or frivolous on its face," and thus cannot survive a motion to dismiss. *Johnson v. Oroweat Foods Co.*, 785 F.2d

503, 510 (4th Cir. 1986); *Whitaker v. Ciena Corp.*, Civil Action No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018) (quoting *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 200 (4th Cir. 2014)). In assessing whether a claim is futile, the Court reviews the claim for sufficiency pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

When considering the sufficiency of a claim, the Court accepts "the well-pled allegations of the complaint as true" and most favorably to the nonmovant. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A claim survives dismissal only if averred facts "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). The Court will not credit naked legal conclusions devoid of factual support. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

With this standard in mind, the Court considers Avanth's arguments for dismissal as to each cause of action as pleaded in the proposed amended complaint.[2]

**A. Count I – FHA Discrimination**

Count I avers that Avanth discriminated against Tiffany in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3619. ECF No. 20-2 ¶¶ 93–96. Avanth argues that the claim fails because no facts make plausible that Avanth's misconduct arose *because of* Tiffany's

[2] The Court will not seriously entertain Avanth's "standing" argument as it appears to be no argument at all. Avanth vaguely contends that Veronica lacks standing to sue because she was neither a tenant nor a party to any contract with Avanth. ECF No. 10-1 at 3. Avanth cites no authority for this broad proposition or otherwise explains how Veronica lacks standing to sue for any specific cause of action. Although standing remains an "irreducible constitutional minimum" for suit, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), a cursory review of the proposed amended complaint reveals no merit to Avanth's contention. The Fair Housing Act, for example, extends protection to all "aggrieved person[s]," 42 U.S.C. § 3602(i), which appear to include Veronica. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372–75 (1982); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103 n.9 (1979); *Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 195–96 (2017). Similarly, as to common law claims arising from personal injuries premised on a landlord's breach of duty of habitability, the right to sue is not confined solely to the leaseholder. *See White v. City of Annapolis*, 439 F. Supp. 3d 522, 543 (D. Md. 2020); *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 352 Md. 544, 566 (1998); *cf. United States v. Henry*, 519 F. Supp. 2d 618, 621 (E.D. Va. 2007) ("Infants have an unconditional right to intervene under 42 U.S.C. § 3614(e)."). Accordingly, the Court rejects any nonspecific "standing" assertion as applied to Veronica who lived in the apartment and avers injuries arising from her residency.

disability. ECF No. 10-1 at 5. The FHA prohibits landlords from "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a [disability] of . . . that person." 42 U.S.C. § 3604(f)(2). To make an FHA claim, some facts must make plausible that "defendants denied her housing 'because of' her [disability]." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 639 (4th Cir. 2016). Therefore, the complaint facts viewed most favorably to Tiffany must "draw a sufficient nexus of causation between" her disability and Avanth's actions. *Id.*

No facts averred in the proposed amended pleading make plausible such a nexus. Rather, the pleading makes plausible the opposite—that the mold infestation caused Tiffany to become disabled. ECF No. 20-2 at 30–46. But no facts suggest that Avanth failed to remediate the unit because Tiffany was disabled. Accordingly, the Court denies amendment of Count I as futile.

**B. Count II – FHA Retaliation**

Count II of the proposed amended complaint avers that Avanth retaliated against Plaintiffs because they complained and filed multiple lawsuits concerning the mold infestation. ECF No. 20-2 ¶¶ 98–99. Avanth maintains that no facts make plausible that Plaintiffs engaged in activity protected under the FHA, or alternatively that Avanth's treated Plaintiffs adversely as a result. ECF No. 10-1 at 5–6. The FHA prohibits acts aimed "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" under the statute. 42 U.S.C. § 3617. To make plausible an FHA retaliation claim, some facts must show that (1) the plaintiff engaged in protected activity; (2) the defendant knew about the activity; (3) and that in response, the defendant took adverse action against the plaintiff. *Hall v. Greystar Mgmt.*

*Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016); *accord King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003).

When viewing the proposed amended complaint facts most favorably to the Plaintiffs, the claims survive challenge. First, Plaintiffs' formal and informal complaints about housing conditions constitute protected activity. Protected activity includes any "action taken to protest or oppose statutorily prohibited discrimination" or "the exercise or enjoyment of rights under 42 U.S.C. § 3604 to equal services and conditions of housing." *Matarese v. Archstone Pentagon City*, 795 F. Supp. 2d 402, 442 (E.D. Va. 2011), *aff'd in part & vacated in part sub nom.*, *Matarese v. Archstone Cmtys, LLC*, 468 F. App'x 283 (4th Cir. 2012). Formal complaints about housing conditions fall squarely within the scope of the statute. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (finding the filing of an administrative complaint to be a protected activity). Nor does Avanth dispute that they knew about the activity.

Plaintiffs also make plausible that Avanth's eviction notice and lawsuit constitute adverse action sufficiently close in time to give rise to an inference of retaliation. "[A]n action is sufficiently 'adverse' if it could dissuade a reasonable person from the exercise of their rights." *Grp. Home on Gibson Island, LLC v. Gibson Island Corp.*, 144 F.4th 522, 536 (4th Cir. 2025) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). And when the adverse action follows on the heels of the protected activity, this is sufficient to state a claim. *Hall*, 637 F. App'x at 99 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001); *Price*, 380 F.3d at 213).

The seriatim lawsuits, at a minimum, make plausible the claim. Plaintiffs sent their first demand letter to Avanth on December 16, 2025, and filed suit in state court on January 7, 2026, in connection with the mold investigation. ECF No. 20-2 ¶¶ 10, 47. Avanth responded five days later with an eviction suit against Tiffany. *Id.* ¶ 1 49. Similarly, after Plaintiffs filed their Complaint in this Court on March 9, 2026, Avanth posted an eviction notice on Plaintiffs'

door seven days later. *Id.* ¶ 53. This tight temporal proximity makes plausible the claim. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (finding that a one-month gap between actions implied causation); *see King*, 328 F.3d at 151 & n.5 (finding that a two-and-a-half-month period was sufficiently close). Accordingly, the motion to amend as to Count II is granted.

**C. Count III – FHA Accommodation**

Likewise, Count III will proceed. The proposed amended pleading avers that Avanth has not reasonably accommodated Tiffany's disability, in violation of the FHA. ECF No. 20-2 ¶¶ 101–02. The FHA prohibits "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *accord Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 272 (4th Cir. 2013). Avanth solely contends that no facts make plausible that the requested mold remediation amounts to an "accommodation," and that it is instead part of "routine maintenance." ECF No. 10-1 at 7. To be sure, "failure to remediate mold, without something more, is not a cognizable claim under the FHA." *Armstrong v. Yopp Props., LLC*, No. 7:13-CV-235-FL, 2015 WL 627951, at *7 (E.D.N.C. Feb. 12, 2015) (collecting cases), *aff'd*, 610 F. App'x 255 (4th Cir. 2015). But where, as here, a tenant is particularly sensitive to mold giving rise to an impairment of a substantial life activity, the FHA failure-to-accommodate claim survives. *See Ogundimo v. Steadfast Prop. & Dev., Inc.*, No. 1:09-cv-00231-OWW-SMS, 2009 WL 650550, at *4–5 (E.D. Cal. Mar. 12, 2009) (holding that plaintiffs with asthma plausibly alleged the denial of a reasonable accommodation for failure to remediate mold); *cf. Beverly v. GatesHudson*, 537 F. Supp. 3d 862, 868 (E.D. Va. 2021) (holding that failure to replace a soiled carpet gave rise to an FHA accommodation claim where the plaintiff was "particularly susceptible to the lingering presence of pet waste due to her respiratory issues").

When viewing the proposed amended complaint facts most favorably to Tiffany, Avanth knew that the mold infestation caused Tiffany's disabling condition, placing Avanth on notice of her particularly sensitivity to the same. *See* ECF No. 20-2 ¶¶ 22, 32–46. And yet, Avanth failed to remediate the condition so that Tiffany could return to her home. *See id.* ¶ 23. As pleaded, the failure to accommodate claim survives challenge. The motion to amend Count III is granted.

**D. Count IV – Consent Decree**

In Count IV, Plaintiffs ask this Court to enforce a consent decree reached in another federal suit to which they were not parties. *Id.* ¶¶ 103–04; *see United States v. Humphrey-Stavrou Assocs., Inc.*, Civil Action No. 22-cv-02448-ELH (D. Md. Oct. 16, 2023), ECF No. 48-1. Avanth rightly contends that the claim fails as a matter of law. ECF No. 10-1 at 7–8. "[A] consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Piliponskiy v. Wal-Mart Stores E., LP*, Civil No. JKB-25-0802, 2025 WL 1615603, at *3 (D. Md. June 6, 2025) (quoting *Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975)). At best, Plaintiffs are beneficiaries of the consent decree. But this alone does not confer a right to sue. The Court, therefore, denies the motion to amend Count IV.

**E. Count V – ADA Discrimination**

Turning next to Count V, Tiffany alleges discrimination arising from the failure to accommodate her disability pursuant to the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. No. 101-336, 104 Stat. 327 (codified as amended at 42 U.S.C. §§ 12101-12213 and 47 U.S.C. § 225), by denying her full enjoyment of a public accommodation because of her disability. ECF No. 20-2 ¶¶ 105–06. Avanth contends the claim cannot proceed because it is not a place of public accommodation under the meaning of the ADA. ECF No. 10-1 at 8. Avanth is correct.

The ADA guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182. The statute lists twelve categories of public accommodations, including hotels, restaurants, theaters, stores, libraries, schools, and the like. *Id.* § 12181. "A residential apartment complex does not fall into any of these groups." *Deitch v. Medstar Med. Grp., S. Md. LLC*, Civ. No. DLB-24-1248, 2025 WL 712984, at *4 (D. Md. Mar. 5, 2025). Thus, the Court denies amendment as to this claim.

**F. Count VI – Fraud and Fraudulent Concealment**

Plaintiffs next aver that Avanth's failure to honor its promises amounts to fraud and fraudulent concealment. The proposed amended complaint particularly asserts that Plaintiffs' reliance on Avanth's false promises to (1) remediate the mold, (2) reimburse them for their hotel expenses, and (3) give them the mold assessment, amounts to fraud. ECF No. 20-2 ¶¶ 107–09. For both fraud and fraudulent concealment, the pleading must make plausible that the defendant knowingly and intentionally made a false statement on which the plaintiff relied to her detriment, causing compensable injury as a result. *See Hoffman v. Stamper*, 385 Md. 1, 29 (2005); *see Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 196–97 (1995) (collecting cases); *see also EDI Precast, LLC v. Carnahan*, 982 F. Supp. 2d 616, 628 (D. Md. 2013); *Green v. H & R Block, Inc.*, 355 Md. 488 (Md. 1999).

Fatal to both versions of fraud is that no facts make plausible that Avanth knew its statements were false at the time they were made. Merely failing to make good on a promise does not constitute fraud. Additionally, as to the failure to provide the mold report, even if Avanth lied about its intent to give the report to Plaintiffs, no facts reflect that they were harmed by the concealment. Rather, the proposed amended complaint, at best, lodges their objection to not having received the report. Thus, the Court denies amendment as to Count VI.

### G. Count VII – Promissory Estoppel

Plaintiffs aver a companion promissory estoppel claim arising from Avanth's broken promises to reimburse hotel expenses and remediate the mold. ECF No. 20-2 ¶¶ 110–11. Avanth maintains that the claim fails because the wrongdoing is covered by a binding contract—the lease—which displaces the quasi-contract claim. ECF No. 10-1 at 9–10. Avanth is correct that promissory estoppel arises where no formal agreement governs the dispute between the parties. *Horlick v. Capital Women's Care, LLC*, 896 F. Supp. 2d 378, 396 (D. Md. 2011) (quoting *Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police v. Md. Transp. Auth.*, 5 A.3d 1174, 1227 (Md. Ct. Spec. App. 2010), *rev'd in part on other grounds*, 21 A.3d 1098 (Md. 2011)); *see also Ver Brycke v. Ver Brycke*, 843 A.2d 758, 771 n.9 (Md. 2004); *see also, e.g.*, *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003). Where no contract covers the alleged breach, the proposed amended complaint also must make plausible (1) that the defendant made a clear and definite promise; (2) with the reasonable expectation that the offer will induce action or forbearance by the plaintiff; (3) inducement of actual and reasonable action or forbearance by the promise that (4) would be to the plaintiff's detriment absent enforcement of the promise. *Sedghi v. PatchLink Corp.*, 440 F. App'x 165, 168 (4th Cir. 2011) (citing *Pavel Enters. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996)).

Although in the end the lease terms may cover the claimed broken promises, Avanth makes no such showing, and the Court cannot otherwise conclude at the pleading stage that the claim fails as a matter of law. Indeed, contractual breach and promissory estoppel often proceed in the alternative. *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 343–44 (D. Md. 2012). Further, when viewing the proposed amended complaint most favorably to Plaintiffs, Avanth made specific promises to them that reasonably induced their extended stay in the hotel and their expectation of remediation. Accordingly, Count VII

survives challenge and the motion to amend is granted as to this claim.

**H. Count VIII – Implied Warranty of Habitability**

Plaintiffs next aver that Avanth breached its implied warranty of habitability in allowing the hazardous mold conditions to proceed unabated. ECF No. 20-2 ¶¶ 112–13. As relief, Plaintiffs seek "rent abatement, repair costs, and all other available remedies." *Id.* ¶ 113. Avanth contends that the Court lacks jurisdiction over what amounts to a rent escrow suit and that Plaintiffs' recovery is limited by Md. Code Ann., Real Prop. § 8-211. ECF No. 10-1 at 10.

Section 8-211 creates "a mechanism for encouraging the repair of serious and dangerous defects which exist within or as part of any residential dwelling unit," and imposes "meaningful sanctions" when a landlord "allows dangerous conditions and defects to exist in leased premises." Md. Code Ann., Real Prop. § 8-211(a)–(b). As relief, § 8-211 contemplates rent abatement, rent escrow, and orders to make repairs. *See id.* § 8-211; *see also Velicky v. Copycat Building LLC*, 476 Md. 435, 460–61 (2021). The statute permits a tenant to "bring an action of rent escrow to pay rent into court." Md. Code Ann., Real Prop. § 8-211(i).

But nothing suggests that § 8-211 divests federal courts of the power to hear the claim once diversity or supplemental jurisdiction is established. In fact, this Court routinely reaches such claims, including those seeking rent escrow. *See, e.g.*, *Addi v. Corvias Mgmt.-Army, LLC*, Civil Action No. ELH-19-3253, 2020 WL 5076170, at *43–44 (D. Md. Aug. 27, 2020); *Hall v. Heather Hill Prop. Co., LLC*, No. 25-cv-0238-ABA, 2026 WL 279112, at *9–10 (D. Md. Feb. 3, 2026); *Durham v. Home Partners Holdings LLC*, Civil Action No. 23-cv-03490-LKG, 2024 WL 4955279, at *6–7 (D. Md. Dec. 3, 2024). Accordingly, Avanth's contention that Plaintiffs attempt to "bootstrap a state statutory rent escrow claim into federal court" is a nonstarter. ECF No. 10-1 at 10–11. Count VIII will proceed.

**I. Count IX – Constructive Eviction and Quiet Enjoyment**

Plaintiffs next allege that by failing to remediate hazardous mold, Avanth has

constructively evicted Plaintiffs and breached the common law covenant of quiet enjoyment. ECF No. 20-2 ¶¶ 114–15. To state a claim for constructive eviction, the plaintiff must allege that the landlord intentionally and substantially interfered with the tenant's beneficial use and enjoyment of the property, and that the landlord's interference with the tenant's use and enjoyment "result[ed] in the tenant vacating the premises" within a reasonable time. *Stevan v. Brown*, 458 A.2d 466, 470 (Md. Ct. Spec. App. 1983).

Avanth argues that the Plaintiffs' "temporary" departure does not make plausible the claim. ECF No. 10-1 at 11. The Court disagrees. As the proposed claim makes clear, Plaintiffs were forced to move out because of the mold 11 months ago, and Avanth's failure to remediate persists. ECF No. 20-2 ¶¶ 28–29. Plaintiffs' initial hope that the displacement would be temporary cannot render these circumstances any less of an eviction. The court grants amendment as to Count IX.

**J. Counts X and XIII – Negligence and Negligence Per Se**

Turning to the negligence-based claims, the proposed amended pleading avers that Avanth breached the duty of care owed to its residents by failing to remediate the mold, amounting to negligence and negligence per se. *Id.* ¶¶ 116–17, 122–23. Each claim depends on making plausible that Avanth breached its duty of care owed to Plaintiffs, and that the breach was the actual and proximate cause of each plaintiff's injury or loss. *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999).

Avanth solely contends that the "economic loss rule" bars the claims. ECF No. 10-1 at 13. The economic loss rule precludes a tort suit where a valid contractual obligation covers the same subject matter and the economic injury arises from the defendant's breach of that contract. *Mesmer v. Md. Auto. Ins. Fund*, 353 Md. 241, 254 (1999). But where the defendant owes an independent duty of care, even if that duty arises from a contractual relationship, the tort claim may proceed. *Id.*

That is this. It is undisputed that Avanth owes its tenants a duty of care, namely, to keep the premises safe from known and preventable hazards, especially when it has undertaken to remedy those conditions. *See Matthews*, 351 Md. at 555–56; *Wells v. Pennrose Mgmt. Co.*, 753 F. Supp. 3d 432, 439–40 (D. Md. 2024). The proposed amended complaint squarely makes plausible that Avanth breached that duty by failing to remediate the hazardous mold, thereby causing Plaintiffs injuries. Accordingly, the Court grants amendment as to Counts X and XIII.

**K. Count XI – Tortious Interference**

Tiffany avers that Avanth tortiously interfered with "economic relations" because of nonspecific "lost earning capacity" arising from the mold exposure. ECF No. 20-2 ¶¶ 118–19. A tortious interference claim must plausibly aver that the defendant intentionally and willfully intended to damage the plaintiff's business interests. *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621, 628–29 (2003). No facts make plausible that Avanth had the requisite knowledge or intent to damage Tiffany's "economic relations," and nothing suggests that Avanth failed to remediate the mold with this ruinous purpose in mind. Accordingly, the claim will not proceed. Amendment is denied.

**L. Counts XII and XIV – Intentional Infliction of Emotional Distress**

Counts XII and XIV allege that Avanth's conduct amounts to intentional infliction of emotional distress ("IIED") as to Tiffany and Veronica, respectively. ECF No. 20-2 ¶¶ 120–21, 124–25. IIED claims are reserved for only the most shocking circumstances where a defendant's extreme and outrageous acts cause the plaintiff severe emotional distress. *Tavakoli-Nouri v. State*, 779 A.2d 992, 999 (Md. Ct. Spec. App. 2001); *Savage v. Mayor & City Council of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010). The claim survives challenge "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992). In those rare instances, complaint facts must make plausible that the plaintiff

"'suffered a *severely* disabling emotional response to the defendant's conduct,' and that the distress was so severe that 'no reasonable man could be expected to endure it.'" *Thacker v. City of Hyattsville*, 762 A.2d 172, 315 (Md. Ct. Spec. App. 2000) (emphasis in original) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). This standard sets a high bar. *See B.N.S. ex rel. Stuart v. Brito*, Civil Case No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018). "[C]onclusory statements of emotional distress" without demonstrably severe injury are often rejected as insufficient for an IIED claim. *Karn v. PTS of Am., LLC*, Civil Action No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sep. 19, 2017); *see Manikhi v. Mass Transit Admin.*, 360 Md. 333, 368 (2000).

When viewing the proposed amended complaint most favorably to Plaintiffs, it falls far short of making the claim plausible. No doubt, injuries arising from unremediated mold can be serious and give rise to several independent causes of action. But no facts show that Avanth's dereliction is so extraordinary, shocking, and outrageous to make plausible an IIED claim. Nor are the emotional damages averred sufficient to sustain a claim. Thus, amendment is denied as to Counts XII and XIV.

**M. Count XV – Economic Harm**

Veronica brings the nonexistent claim for "economic harm" for her lost wages and the value of caregiving services to Tiffany. ECF No. 20-2 ¶¶ 126–27; *see* ECF No. 10-1 at 4. Veronica's attempt to repackage damages as a cause of action fails. Amendment is denied as to Count XV.

**N. Count XVI – MCPA Violation**

Plaintiffs add this claim in the proposed amended complaint averring that Avanth's broken promise regarding hotel expenses and the automated lease renewal notices constitute unfair or deceptive trade practices, in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301. ECF No. 20-2 ¶¶ 128–34. In response,

Avanth argues that the MCPA prohibits misrepresentation during an "offer of sale," and thus, does not reach statements made once the lease is in effect. ECF No. 24 at 3.

The MCPA prohibits unfair or deceptive practices or misrepresentations on which the plaintiff relied and which caused actual injury, *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015), so long as the deceptive conduct occurs during the "sale or offer for sale to the consumer," *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 636 (Md. 1995). For residential leases, the alleged misrepresentation must take place in connection with entering the lease and "induce the prospective tenant to enter into such a lease." *Scroggins v. Dahne*, 335 Md. 688, 696 (1994).

Through this lens, Avanth's promise to reimburse hotel costs fails because the promise was not designed to induce Tiffany's entering or renewing her lease. ECF No. 20-2 ¶ 69. As for Avanth's automated lease renewal notices, while sufficient to constitute an "offer for sale" under the MCPA, they are not unfair or deceptive. Mere contentions that the notice was boilerplate or "AI-generated" does not explain how Avanth's acts constitute an MCPA claim. *Id.* ¶ 74. Thus, Plaintiffs' request to add this claim is denied.

In sum, the Court grants amendment and will permit Plaintiffs to file an Amended Complaint that includes Counts II, III, VII, VIII, IX, X, and XIII within seven days from the date of this decision. The Court otherwise denies amendment as futile and denies the motion to dismiss the original Complaint as moot.

The Court next turns to Plaintiffs renewed request for injunctive relief.

## III. Motion for TRO, Preliminary Injunction, and Emergency Hearing

Plaintiffs seek interim relief to compel Avanth to transmit the mold assessment report, remediate the mold within the unit, and cease any direct contact with Plaintiffs. ECF No. 21-4 at 5. They ask for a hearing. A hearing is not necessary because Plaintiffs have failed to meet the standard necessary to obtain the extraordinary relief of preliminary injunction.

*MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). A preliminary injunction shall issue only where the movant demonstrates by preponderant evidence each of the following: (1) likelihood of success on the merits "by a clear showing"; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that preliminary injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–24 (2008); *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Failure to meet its burden on any one of these factors compels denial. *Am. Fed. of Teachers v. Bessent*, 152 F.4th 162, 169 (4th Cir. 2025) (quoting *Frazier v. Prince George's County*, 86 F.4th 537, 544 (4th Cir. 2023)).

Plaintiffs' motion fails for lack of irreparable harm in the absence of preliminary relief. The claims are inherently contradictory in this respect. Plaintiffs at once contend that they are harmed if they return to the unit because of mold exposure, but they are also irreparably harmed if they remain outside the home. ECF No. 21-4 at 17. The fact remains that because Plaintiffs have resided elsewhere for months, they are not currently exposed to the dangerous mold in Avanth's unit. And any injuries arising from the displacement can be compensated through money damages.

Plaintiffs also seek injunctive relief arising from Avanth's allegedly unauthorized contact with them. But nothing shows such contact visits irreparable harm or is even ongoing. Rather, it appears that Avanth has not communicated directly with Plaintiffs since April 20, 2026. ECF No. 20-2 at 16. Last, Plaintiffs cannot obtain *injunctive* relief to demand a mold report. The claim will proceed to discovery on the surviving counts, and Plaintiffs may request the document as part of formal discovery. The motion is denied.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for leave to amend the Complaint, denies Avanth's motion to dismiss as moot, and denies

Plaintiffs' motion for interim relief. The Court allows Counts II, III, VII, VIII, IX, X, and XIII of the proposed pleading to proceed. Counts I, IV, V, VI, XI, XII, XIV, XV, and XVI are dismissed with prejudice. Within seven days from today, Plaintiffs shall file an Amended Complaint consistent with this opinion and order. Avanth shall answer the Amended Complaint within 14 days after it is filed.

A separate order follows.

10/27/2026
Date

/s/
PAULA XINIS
United States District Judge